UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RICHARD OGLESBY,

                Plaintiff,

v.                                    Case No.  5:05-cv-234-Oc-10GRJ

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying in part his application for disability insurance benefits and Supplemental Security Income payments.  (Doc. 1.)  The Commissioner has answered (Doc. 8) and both parties have filed briefs outlining their respective positions.  (Docs. 18 & 21.)  For the reasons discussed below, the Commissioner's decision should be **AFFIRMED.**

## I.  PROCEDURAL HISTORY

On April 26, 2001, Plaintiff filed an application for a period of disability and disability insurance benefits, claiming a disability onset date of January 1, 1997.  (R. 22.)  Plaintiff's application was denied on procedural grounds initially and upon reconsideration  because Plaintiff did not meet the disability insured status requirements as of the alleged disability onset date of January 1, 1997. (R. 22.)   On December 4,

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

2002, Administrative Law Judge ("ALJ") Philemina Jones issued a decision and determined that Plaintiff's alleged disability onset date and date last insured were the same date -- December 31, 1996. (R. 36-39.)  The case was then remanded to the State Agency for a disability determination.  Plaintiff's application was denied initially (R. 42-44) and upon reconsideration (R. 56-58.)   Thereafter, ALJ Jones conducted a hearing on January 9, 2004 (R. 427-65) and issued a decision unfavorable to Plaintiff on March 23, 2004. (R. 19-31.)  The Appeals Council denied Plaintiff's request for review. (R. 4-6.)  On May 16, 2005, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking

---

[2] *See* 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[5] However, the

district court will reverse the Commissioner's decision on plenary review if the decision

applies incorrect law, or if the decision fails to provide the district court with sufficient

reasoning to determine that the Commissioner properly applied the law.[6]   The law

defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment that can be expected to result in

death, or has lasted or can be expected to last for a continuous period of not less than

twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her

previous work, or any other substantial gainful activity which exists in the national

economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a

claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a

claimant does not have any impairment or combination of impairments which

significantly limit her physical or mental ability to do basic work activities, then she does

---

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her

RFC, age, education, and past work) prevent her from doing other work that exists in

the national economy, then she is disabled.[14]

    The burden of proof regarding the plaintiff's inability to perform past relevant work

initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to

demonstrate that "other work" which the claimant can perform currently exists in the

national economy.[16] The Commissioner may satisfy this burden by pointing to the grids

for a conclusive determination that a claimant is disabled or not disabled.[17]

    However, the ALJ should not exclusively rely on the grids when the claimant has

a non-exertional impairment which significantly limits his or her basic work skills or when

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

## III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was thirty-nine years old as of December 31, 1996 and forty-seven years old at the time of the ALJ's decision.  (R. 16, 435.)   Plaintiff has a GED (R. 363, 436) and past work experience as a pipefitter. (R. 358, 452.)   Plaintiff contends that he has been unable to work due to back injuries and subsequent surgery. (R. 357).

---

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

On November 30, 1994, Plaintiff was admitted to the hospital following an alcoholic binge.  (R. 312-23.)  Plaintiff was diagnosed *inter alia* with alcoholic hepatitis and chronic alcohol liver disease. The discharging physician noted that Plaintiff's prognosis was excellent if he avoided alcohol and extremely poor if he continued to abuse himself.

On September 11, 1995, at the request of the Office of Social Security Disability Determinations, Karen Estill, Ph.D. performed a neuropsychological evaluation of Plaintiff.  (R. 334-41.)  However, the results of the evaluation were questionable because Plaintiff came to the appointment drunk.

On September 12, 1995, Plaintiff was seen by Donald J. Tindall, M.D. for a consultative evaluation. (R. 342-45.)  Dr. Tindall found that laboratory studies were consistent with severe alcoholic cirrhosis and most likely, liver failure.  Dr. Tindall noted that x-rays of the right knee showed mild degenerative changes and x-rays of the spine showed narrowing of the L4-L5 and L5-S1 disk interspaces. Dr. Tindall noted that Plaintiff walked with a normal gait and he was able to get out of a chair and on and off the examination table without difficulty.  Dr. Tindall further noted that Plaintiff's grip strength was 5/5 and a straight leg raising test was negative.  While noting some numbness below the left knee, Dr. Tindall noted no motor deficits in the lower extremities.  Range of motion in the thoracolumbar spine revealed 40 degrees of flexion, 15 degrees of extension, right and left lateral bending to 15 degrees, and rotation to the right and left of 15 degrees.

Dr. Tindall diagnosed Plaintiff with severe alcoholic cirrhosis and most likely, liver failure, knee pain and chronic low back pain.  With respect to the alcoholic cirrhosis, Dr.

Tindall opined that Plaintiff "will kill himself drinking if he does not stop immediately" but

that Plaintiff "says he enjoys drinking and has no desire to stop."  Dr. Tindall opined that

Plaintiff's knee pain was probably due to degenerative arthritis and possibly Voshel's

bursitis.  Dr. Tindall recommended that Plaintiff see an orthopedist for further evaluation

but Dr. Tindall noted that there was a "reasonable chance" that a local injection of

corticosteroids could be "very beneficial."  With respect to Plaintiff's chronic low back

pain, Dr. Tindall opined that it was most likely discogenic and soft tissue in origin.  Dr.

Tindall recommended reevaluation of his back pain by a pain specialist.  Dr. Tindall then

concluded, that based upon the subjective and objective data, Plaintiff did not have the

functional capacity to do any type of work.

Dr. Tindall evaluated Plaintiff again on September 17, 1996.  (R. 351-53.)  Dr.

Tindall noted a slight limp favoring Plaintiff's left lower extremity, decreased sensation

but not total numbness on all surfaces of the left leg, ankle, or foot and a positive left

straight leg raise.  Dr. Tindall further noted strength throughout right lower extremity was

5/5 and strength throughout the left lower extremity was 4/5 but that give-way

phenomenon is exhibite.  Dr. Tindall noted that Plaintiff could flex the thoracolumbar

spoine 65 degrees, extend 10 degrees, laterally bend to the right and left 15 degrees,

and rotate to the right and left 15 degrees.  Dr. Tindall opined that  physical and

laboratory findings were consistent with alcoholism, Laennec's cirrhosis[23] and liver

failure.  Dr. Tindall noted that although Plaintiff was only drinking four to six beers per

day, "he is killing himself in the process" and that if there was any chance of recovery,

---

[23] The later stage of alcoholic cirrhosis characterized by contraction of the liver.  See *Stedmans Medical Dictionary*, "Cirrhosis" (27th ed. 2000).

"he needs to stop drinking now." Dr. Tindall opined that Plaintiff's "alcoholism and secondary Laennec's cirrhosis represent both a significant impairment and disability." Dr. Tindall was unsure as to the exact cause of Plaintiff's low back pain with radiculopathy and recommended further evaluation by an MRI scan and an orthopedist. Dr. Tindall opined that based upon the subjective and objective data, Plaintiff "does not have the functional capacity to work as a pipefitter or do any job classification on a full time basis."

On November 30, 1995, Plaintiff saw Kenneth Anderson, M.D. (R. 130-31.) Dr. Anderson noted alcohol on Plaintiff's breath and Plaintiff reported that he was drinking 6-12 beers per day and that he had been doing so for approximately 20 years. (R. 130.) Plaintiff reported chronic left lower back pain radiating down the left leg and numbness around the lower thigh and knee down toward his foot. (Id.) Plaintiff also complained of bleeding from his mouth, nose and rectum daily for the past two months. (Id.) Dr. Anderson opined that Plaintiff was totally and permanently disabled due to complications of cirrhosis and alcoholism and that his back pain and radiculopathy also prevented him from working at that time, but that other treatment modalities might improve his back condition. (R. 131.) On March 12, 1996, Plaintiff reported that he was still drinking "feeling that it would not make much difference at this point in his prognosis." (R. 129.) Dr. Anderson noted that Plaintiff's prognosis was very poor due to the extent of Plaintiff's cirrhosis and his continuing to drink and smoke. (Id.) On June 12, 1996, Plaintiff reported that he had reduced his alcohol consumption to eight beers per day. (R. 128.) Dr. Anderson advised Plaintiff that his prognosis was very poor and that he could hemorrhage to death at any time. (Id.) Dr. Anderson noted that Plaintiff

was against any referrals or more aggressive care and that he would like to "simply

continue with the medications as is and he will continue to drink essentially until he

dies." (Id.)  On October 10, 1996, Plaintiff reported that he was only having two to three

drinks per day and that he was unable to stop drinking completely due to severe

shakiness. (R. 127.)  Dr. Anderson diagnosed Plaintiff with cirrhosis secondary to

alcoholism secondary to coagulopathy[24] and noted that Plaintiff refused further

bloodwork or more aggressive action. (Id.)

A physical RFC assessment was performed by non-examining state agency

physicians on December 27, 2002.  (R. 86-93.)  Based on the medical records, the state

agency physician found that Plaintiff could frequently lift and/or carry ten pounds and

occasionally lift and/or carry twenty pounds; stand and/or walk at least two hours in an

eight-hour workday; sit about six hours in an eight-hour workday; and push and pull

without limitation.  The physician also  found that Plaintiff should never climb and should

only occasionally balance, stoop, kneel, crouch and crawl.

Jim Takach, MD, a non-examining state agency physician performed a physical

RFC assessment on April 29, 2003.  (R. 190-97.)  Takach found that Plaintiff retained

the RFC to lift/carry up to 10 pounds frequently and occasionally, stand/walk up to four

hours per eight-hour workday, sit for about six hours per eight-hour workday, and push

and pull without limitation.  Takach further found that Plaintiff could occasionally climb

ramps and stairs, balance, stoop, kneel, crouch and crawl, but should never climb

ladders, ropes or scaffolding.  Plaintiff should also avoid concentrated exposure to

---

[24] A disease affecting the coagulability of the blood.  See *Stedmans Medical Dictionary* (27th ed. 2000).

extreme heat or cold, fumes, odors, dusts, gases, and poor ventilation and even moderate exposure to working at heights or around machinery.

Plaintiff testified that prior to December 31, 1996 he was unable to work due to a work-related back injury in the mid to late 1980's.  (R. 440-41).   Plaintiff subsequently had back surgery, which did not relieve his back pain and resulted in numbness in his lower left leg.  (R. 441-43.)  Plaintiff testified that as of December 1996 he could lift twenty pounds, sit or stand for ten or fifteen minutes at a time and walk less than the length of a football field on level ground, although his left leg would occasionally go out and he had trouble bending and crawling.  (R. 443-47.)  Plaintiff testified that he began drinking in 1995 and only drank for four or five years.  (R. 440.)

The ALJ determined that as of December 31, 1996, Plaintiff suffered from chronic low back pain with radiculopathy and liver disease. (R.27.)  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (Id.) Specifically, the ALJ found that Plaintiff's back condition was not of the severity described in Section 1.04 of the musculoskeletal Listings of Impairments as revised in February 2002.  (Id.)  Additionally, the ALJ found that although Plaintiff had severe liver disease, his condition was grounded in alcohol abuse and no benefits may be paid for any "disability" grounded in drug and/or alcohol abuse pursuant to Section 105 of Public Law 104-121.  (Id.)

The ALJ then considered whether Plaintiff's impairments and limitations, independent of his liver disease caused by alcoholism rendered Plaintiff disabled. (Id.) The ALJ concluded that when Plaintiff was not abusing alcohol he was capable of

performing sedentary work.  (R. 28.)  Specifically, the ALJ found that on December 31,

1996, Plaintiff retained the RFC to lift/carry up to ten pounds frequently and

occasionally, stand/walk up to four hours per eight-hour workday, sit for about six hours

per eight-hour workday, and occasionally climb ramps and stairs, balance, stoop, kneel,

crouch, and crawl. (Id.)  Additionally, Plaintiff should never climb ladders, ropes or

scaffolding and should avoid concentrated exposure to extreme heat or cold, fumes,

odors, dusts, gases, and poor ventilation and even moderate exposure to working at

heights or around machinery. (Id.)

In reaching this conclusion regarding Plaintiff's RFC, the ALJ found that the

opinions of Dr. Tindall and Dr. Anderson were based "primarily" on Plaintiff's liver

disease secondary to alcoholism.  The ALJ agreed with the non-examining state agency

physician who concluded that Plaintiff would have been able to perform a significant

range of sedentary work when not under the influence of mind altering alcohol.  The ALJ

also found portions of Plaintiff's testimony somewhat exaggerated and disproportionate

to the diagnostic and clinical findings.

The ALJ then found that Plaintiff could not perform his past relevant work as a

pipefitter.  (R. 28.)  Accordingly, the burden shifted to the Commissioner to show that

there were other jobs existing in significant numbers in the national economy in

December 1996 that the claimant would have been able to perform, consistent with his

residual functional capacity, age, education and work experience. (R. 28.) Based on

Medical-Vocational Rules 201.28 and 201.29 and testimony from the Vocational Expert

the ALJ concluded that  there were jobs existing in significant numbers in the national

economy in December 1996, which Plaintiff was able to perform.  Accordingly, the ALJ

concluded that Plaintiff was not disabled.

## IV.  DISCUSSION

Plaintiff argues that the ALJ's finding that Plaintiff had the capacity to perform a

full range of sedentary work as of December 31, 1996 is not supported by substantial

evidence.  The ALJ found that Plaintiff's alcoholism was a contributing factor to the

determination of disability and that, but for his alcoholism, Plaintiff could perform a full

range of sedentary work.  For the following reasons, the ALJ's finding is supported by

substantial evidence.

Section 105 of the Contract with America Advancement Act of 1996 provides that

"[a]n individual shall not be considered to be disabled for purposes of this subchapter if

alcoholism or drug addiction would (but for this paragraph) be a contributing factor

material to the Commissioner's determination that the individual is disabled."[25]  Once

the Commissioner determines a claimant to be disabled and finds medical evidence of

alcoholism or drug addiction, the Commissioner then "must determine whether . . . drug

addiction or alcoholism is a contributing factor material to the determination of a

disability."[26]   The key factor in determining whether drug addiction or alcoholism is a

contributing factor material to the determination of a disability is whether the claimant

would still be found disabled if he stopped using drugs or alcohol.[27]  In such materiality

---

[25] 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

[26] Doughty v. Apfel, 245 F.3d 1274, 1279 (11th Cir. 2001)(quoting 20 C.F.R. §404.1535).

[27] See id.

determinations, the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination.[28]

In determining that Plaintiff's alcohol abuse was a contributing factor material to his disability, the ALJ considered the testimony of Dr. Tindall and Dr. Anderson, both of whom opined that Plaintiff was totally disabled because of his condition.  The ALJ concluded that their opinions were "based primarily on Plaintiff's continued unabated drinking that was exacerbating his liver disease."  (R. 27.)  While, Dr. Tindall and Dr. Anderson diagnosed Plaintiff with knee pain and chronic lower back pain, their reports focused largely on Plaintiff's alcoholism and cirrhosis.  On September 12, 1995, Dr. Tindall noted that Plaintiff was drinking twelve beers per day and he opined that Plaintiff "will kill himself drinking if he does not stop immediately" but that Plaintiff "says he enjoys drinking and has no desire to stop."   (R. 342, 344.)  On September 17, 1996, Dr. Tindall noted that although Plaintiff was only drinking four to six beers per day, "he is killing himself in the process" and that if there was any chance of recovery, "he needs to stop drinking now."  (R. 353.) Dr. Tindall opined that Plaintiff's "alcoholism and secondary Laennec's cirrhosis represent both a significant impairment and disability." (Id.)   Likewise, Dr. Anderson opined that Plaintiff was "totally and permanently disabled based on his complications of cirrhosis and alcoholism" and repeatedly advised Plaintiff that his prognosis was very poor as long as he was drinking.  (R. 128-31.)  On June 12, 1996, Dr. Anderson noted that Plaintiff would like to "continue to drink essentially until he dies." (R. 128.)

---

[28] See id. at 1280.

Moreover, neither Dr. Tindall nor Dr. Anderson made findings of functional limitations regarding Plaintiff's knee or lower back pain.  Dr. Anderson did not make any diagnoses regarding Plaintiff's knee and although Dr. Tindall recommended further evaluation of Plaintiff's knee by an orthopedist, he opined that "there is a reasonable chance that a local injection of corticosteroids . . . could be very beneficial" (R. 345) and he did not even mention Plaintiff's knee pain in his subsequent evaluation on September 17, 1996. (R. 351-53.)

With respect to Plaintiff's back pain and radiculopathy, Dr. Anderson opined that it "also prevent[ed] him from working at this time." (R. 131.)  However, Dr. Anderson conclusion is not supported by any diagnostic clinical findings and he noted that "other treatment modalities may possibly improve" Plaintiff's back condition.  (R. 130-31.)   Dr. Tindall recommended further evaluation of Plaintiff's back, but he did not make any findings as to functional limitations.  (R. 345, 353.)  Additionally, Dr. Tindall noted on September 17, 1996 that Plaintiff stated that he could sit for about one hour at a time, stand for five minutes at a time, walk about 100 yards before having to stop and rest and lift twenty pounds.  (R. 351.)  However, Plaintiff's subjective assessment merely reported by Dr. Tindall does not constitute a finding by Dr. Tindall as to Plaintiff's functional limitations.  Accordingly, the ALJ's conclusion that Dr. Tindall and Dr. Anderson's opinions were based primarily on Plaintiff's alcoholism is supported by substantial record evidence.

The ALJ also relied upon the non-examining state agency physician, who opined that Plaintiff would have been able to perform a significant range of sedentary work when not under the influence of mind altering alcohol.  (R.190-97.)  Specifically, he

found that Plaintiff retained the RFC to lift/carry up to 10 pounds frequently and

occasionally, stand/walk up four hours per eight-hour workday, sit for about six hours

per eight-hour workday and occasionally climb ramps and stairs, balance, stoop, kneel,

crouch and crawl.  He further found that Plaintiff should never climb ladders, ropes or

scaffolding and should avoid concentrated exposure to extreme heat or cold, fumes,

odors, dusts, gases, and poor ventilation and even moderate exposure to working at

heights or around machinery. As the ALJ noted, the opinion of the state agency

physician was consistent with Dr. Tindall's diagnostic clinical findings that Plaintiff was

having some problems with his back and left leg, walked with a mild limp, and had a

positive straight leg raising test.  (R. 28.)

The ALJ also considered and discredited portions of Plaintiff's testimony -- that

as of December 31, 1996, Plaintiff could sit or stand for only a few minutes at a time and

that he would sometimes fall when walking.  (R. 27.)[29]   If an ALJ decides not to credit a

claimant's testimony about subjective complaints, the ALJ must articulate specific and

adequate reasons for doing so, or the record must be obvious as to the credibility

finding.[30]  While an adequate credibility finding need not cite "particular phrases or

---

[29] In large part, Plaintiff's testimony was not inconsistent with the ALJ's finding that Plaintiff could perform sedentary work.   Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  The work is generally stationary at a sitting position, but a limited amount of walking and standing may be necessary -- i.e., generally sitting 6 hours out of an 8-hour workday and standing or walking 2 hours out of an 8-hour workday.  *See* 20 CFR §§404.1567(a),  416.967(a); Social Security Ruling 96-9P, 1996 WL 374185 (SSA 1996).  Plaintiff testified that as of December 1996 he could lift twenty pounds, sit or stand for ten or fifteen minutes at a time and walk less than the length of a football field on level ground, although his left leg would occasionally go out and he would fall.  (R. 441-47.)  Plaintiff further testified that he had trouble bending and crawling and that on some nights he was only able to sleep three or four hours because of the pain. (R. 447-49.)

[30] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and
(continued...)

formulations [...] broad findings that a claimant lacked credibility and could return to her

past work alone are not enough to enable a court to conclude that the ALJ considered

her medical condition as a whole."[31] A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record.[32]

However, a lack of a sufficiently explicit credibility finding becomes a ground for remand

when credibility is critical to the outcome of the case.[33]  If proof of disability is based on

subjective evidence and a credibility determination is, therefore, critical to the decision,

"the ALJ must either explicitly discredit such testimony or the implication must be so

clear as to amount to a specific credibility finding."[34] As a matter of law, the failure to

articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true.[35]

In the instant case, it appears as though the ALJ applied the Eleventh Circuit's

pain standard "threshold"[36] assessment to Plaintiff's subjective complaints by noting the

Plaintiff's complaints of chronic low back pain with radiculopathy.  (R. 376.)  While the

_____

(...continued)
Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[31] Foote at 1562-1563.

[32] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[33] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[34] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[35] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[36] Marbury v. Sullivan, 957 F.2d 837,  839 (11th Cir. 1992).  .

ALJ did not cite the exact language of the standard, he did state that he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and Social Security Ruling 96-7p." (R. 27.)  This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard.  Moreover, the ALJ cited 20 C.F.R. §§ 404.1529, which contains the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[37]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing an underlying medical condition, chronic low back pain with radiculopathy, that could be expected to give rise to pain.  Once Plaintiff met this initial burden, however, the ALJ found not credible Plaintiff's testimony that as of December 31, 1996, Plaintiff could sit or stand for only a few minutes at a time and that he would sometimes fall when walking.  In support of his conclusion, the ALJ stated that as of September 1995, Dr. Tindall noted that Plaintiff walked with a normal gait and was able to get out of a chair and on and off the examination table with difficulty and that in September 1996, Dr. Tindall noted a slight limp, 4/5 motor strength on the left, 5/5 motor strength on the right, and some decreased sensation in Plaintiff's left lower extremity, but not total numbness.  (R. 27.)  Thus, the ALJ articulated explicit and adequate reasons to

---

[37] See Wilson,  284 F.3d at 1226.

discredit Plaintiff's testimony, and these reasons are supported by substantial evidence

of record.[38]

Accordingly, because there is sufficient record evidence supporting the ALJ's

finding that Plaintiff could perform sedentary work as of December 31, 1996, the

Commissioner's decision is due to be affirmed.[39]

## V. <u>RECOMMENDATION</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida, on June 21, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
      The Honorable Wm. Terrell Hodges
      Senior United States District Judge

      Counsel of Record

---

[38] The ALJ also discredited Plaintiff's testimony that he had stopped drinking. While Plaintiff testified that he was not currently drinking, the record evidence is clear that Plaintiff was drinking through December 31, 2006. In addition to Dr. Tindall and Dr. Anderson's records discussed above in detail, Plaintiff testified at the hearing that he began drinking in 1995 and drank for four or five years. (R. 440.)

[39] Because Plaintiff does not challenge the ALJ's use of the grids or her questioning of the Vocational Expert, the Court does not address those portions of the Decision.